UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES E. CROCKETT,

                Petitioner,

    v.

RON HAYNES,

                Respondent.

CASE NO. 3:19-cv-06211-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  April 24, 2020

The District Court has referred this petition for a writ of habeas corpus under 28 U.S.C. § 2254 to United States Magistrate Judge J. Richard Creatura as authorized by 28 U.S.C. § 636(b)(1)(A) and (B) and local Magistrate Judge Rules MJR3 and MJR4.

Petitioner, who is incarcerated, challenges his state court conviction and argues that the trial court violated the Confrontation Clause by excluding certain text messages from the victim. Petitioner's Confrontation Clause argument was not properly exhausted since his assertion of ineffective assistance of appellate counsel on collateral review did not fairly present the Confrontation Clause claim.  The claim is also procedurally defaulted, and petitioner does not

1  show that an exception from procedural default applies.  The Court should therefore dismiss

2  petitioner's first ground.  Petitioner's other argument is that the state court of appeals improperly

3  applied the law of ineffective assistance of counsel to his claim that trial counsel should have

4  objected to certain testimony.  However, the court of appeals properly applied the law, and this

5  ground for review also lacks merit.  Therefore, the habeas petition should be denied.

6

7                                        **FACTS**

8        In December 2014, the Pierce County Superior Court convicted petitioner of four counts

9  of second degree rape of a child[1] and sentenced him to 210 months to life in prison.  *See* Dkt. 6-

10  1, at 2–3, 6.  In May 2016, Division Two of the Washington State Court of Appeals affirmed

11  petitioner's convictions.  The Washington State Supreme Court denied petitioner's request for

12  review of this decision on November 2, 2016.  Dkt. 6-1, at 169.

13        Petitioner filed a personal restraint petition ("PRP") in the Court of Appeals on October

14  30, 2017.  Dkt. 6-1, at 174.  On March 4, 2019, Division One of the Washington State Court of

15  Appeals denied petitioner's personal restraint petition.  Dkt. 6-1, at 19.  In doing so, Division

16  One summarized the facts of petitioner's trial as follows—

17        In 2008, when M.W. was 12 years old, her adopted mother, Rhonda Crockett,
       married Crockett and Crockett moved into the family home.  According to M.W.,
18        shortly after Crockett moved in, he began to touch her inappropriately.  M.W.
       testified that initially Crockett touched her breasts and vagina over her clothing, but
19        the touching later progressed to digital penetration.  On Thanksgiving 2008, M.W.
       disclosed the touching to Rhonda.  Rhonda immediately confronted Crockett and
20        held a family meeting with Crockett and M.W. to discuss M.W.'s disclosure.
       During that meeting, Crockett admitted to touching M.W., but not in the way that
21        M.W. had described.  According to Crockett, he accidentally touched M.W.'s breast
       area and her leg while he was teaching M.W. and her younger sister what to do if
22        anyone touched them inappropriately.  No one called the police following the

23

24  [1] RCW 9A.44.076.

Thanksgiving 2008 meeting, and M.W. testified that the touching stopped thereafter.

About five years later, in August 2013, M.W. and Rhonda, whose relationship was strained at the time, had an altercation during which Rhonda hit M.W., grabbed her by her hair, and threw her to the ground. Some days later, M.W. made a post to her Facebook page that she later described as follows:

> Just that I was tired of having to live in the same house and remember and see that my—like the man—because my mom's husband raped me, and something about my mom almost breaking my neck. And then at the end of it, I just posted "I'm a dead girl walking."

Officers were dispatched to the Crockett home on August 26, 2013, after an anonymous caller reported M.W.'s Facebook post to the police. The officers removed M.W. from the Crockett home, and Child Protective Services later placed her into protective custody. On August 29, 2013, Detective Cynthia Brooks and social worker Mara Campbell interviewed M.W. In December 2013, the State charged Crockett with four counts of rape of a child in the second degree.

Crockett's defense theory was that M.W. lied about Crockett's abuse to get away from the Crockett household. To that end, Crockett made a pretrial request to introduce extrinsic evidence that M.W. "ha[d] a motivation to lie about the alleged sexual assault to effectuate her removal from a strict home environment." Crockett also asked to introduce screen shots of eight text messages sent from M.W.'s mobile phone. The trial court admitted two of the eight for impeachment purposes only.

Additionally, Crockett opposed the State's pretrial request to exclude character evidence and evidence of Crockett's reputation for truthfulness, including testimony from Charles and Regina Harris, who are members of Crockett's church. Ultimately, neither of the Harrises testified.

M.W. testified at trial. On cross-examination, Crockett's counsel questioned M.W. extensively about her feelings toward Rhonda, the altercation between M.W. and Rhonda that preceded M.W.'s August 2013 Facebook post, and the two text messages that the court admitted. In the State's view, this cross-examination suggested that M.W. had a motive to fabricate her allegations against Crockett. The State then elicited testimony from Brooks and Campbell about what M.W. told them during their August 29, 2013, interview, relying on the hearsay exception for prior consistent statements.

*Matter of Crockett*, 7 Wn. App. 2d 1063, 2019 WL 1013049, at *1–2 (March 4, 2019).

The Washington Supreme Court denied review of Division One's opinion on August 23, 2019. Dkt. 6-1, at 425. Petitioner then timely filed a habeas petition under 28 U.S.C. § 2254 in this Court.

1

**DISCUSSION**

2

**I. Grounds for Relief**

3        Petitioner alleges two grounds for relief:  first, that he was denied his right to confront

4   and cross-examine adverse witnesses as guaranteed by the federal and Washington State

5   constitutions based on the trial court's ruling excluding certain text messages sent by the victim.

6   Dkt. 1, at 4, 9.  Second, petitioner argues that his trial counsel rendered ineffective assistance by

7   failing to object when two witnesses testified about statements that the victim had made to them.

8   Dkt. 1, at 10, 13.  Neither of these grounds merit habeas relief, as discussed below.

9

**II.  Standard of Review**

10        Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

11   petition may be granted with respect to any claim adjudicated on the merits in state court only if

12   the state court's decision was contrary to, or involved an unreasonable application of, clearly

13   established federal law, as determined by the Supreme Court, or if the decision was based on an

14   unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

15        A federal court may grant a habeas petition under two circumstances.   First, a federal

16   habeas court may grant the writ if the state court decision is "contrary to" clearly established

17   federal law because the state court arrived at a conclusion opposite to that reached by the

18   Supreme Court on a question of law, or if the state court decides a case differently than the

19   Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529

20   U.S. 362, 405 (2000).

21        Second, a federal habeas court may grant the writ if the state court identifies the correct

22   governing legal principle from the Supreme Court's decisions but "unreasonably appl[ies]" that

23   principle to the facts of the prisoner's case.  *Id*. at 407.  The Supreme Court has made clear that a

24

state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).   AEDPA requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  In addition, review of state court decisions under 28 U.S.C. § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

### III.  Ground One:  Excluded Text Messages

#### A.  Petitioner's Arguments

Petitioner's claim about the excluded text messages rests on the trial court's decision to exclude various text messages to and from the victim on August 19, 24, and 26, 2013, allowing only two text messages. *See* Dkt. 1, at 6.  Petitioner argues that such prevented him from arguing that MW had a motive to falsely accuse him in order to get out of her mother's house and to hurt her mother.  Dkt. 1, at 5.  Absent the excluded text messages, he argues, the State was able to successfully argue in closing that the victim's conflicts with her mother were not to the point of plotting revenge.  Dkt. 1, at 10.

#### B.  Petitioner Did Not Exhaust Ground One

Petitioner did not raise his argument that exclusion of the text messages violated his right of confrontation in his direct appeal.  *See* Dkt. 6-1, at 39, 135.

Petitioner later filed a PRP arguing that his appellate counsel was ineffective for failing to argue that the trial court erred in excluding these text messages.  Dkt. 6-1, at 178.  Division One disagreed, holding that had appellate counsel made such an argument, there was no reasonable probability that it would have been successful and therefore that petitioner had failed to show ineffective assistance of appellate counsel.  Dkt. 6-1, at 416.  Division One further addressed

1    petitioner's argument that his appellate counsel should have argued that excluding the text

2    messages violated his constitutional right to present a defense and impeach the victim.  Dkt. 6-1,

3    at 413.  Division One again rejected this argument, finding that petitioner had not established a

4    reasonable probability that the outcome would differ where these arguments lacked merit.  *See*

5    Dkt. 6-1, at 405, 413–16.

6            Petitioner sought review in the Washington Supreme Court of, as relevant here, whether

7    the Court of Appeals erred by applying an incorrect test to whether his right to confront and

8    cross-examine witnesses had been infringed.  Dkt. 6-1, at 386.  The Commissioner denied

9    review, finding that petitioner had not raised this substantive claim in his personal restraint

10   petition and had instead brought it as a reason that his appellate counsel was ineffective:

11           First, Mr. Crockett contends that the Court of Appeals decision conflicts with *State
             v. Darden*, 145 Wn.2d 612, 622[](2002), as to whether the trial court erroneously
12           excluded impeachment evidence in the form of text messages.  *Mr. Crockett did
             not assert this substantive claim as an independent basis for relief in his personal
13           restraint petition but argued that appellate counsel was ineffective in failing to
             raise this issue on direct appeal.* . . .
14           Here, as the Court of Appeals explained, this court in *Darden* held that the three
             part test Mr. Crockett relies upon did not apply in that case. . . .  [T]he Court of
15           Appeals distinguished *Darden*, and Mr. Crockett concedes that it is distinguishable.
             Accordingly there is no conflict of authority that merits review under RAP
16           13.4(b)(1).

17   Dkt. 6-1, at 423 (emphasis added).  The Commissioner further noted that petitioner's argument

18   failed to address how counsel's failure to raise the claim was prejudicial:

19           And in any event, Mr. Crockett's petition fails to demonstrate the prejudice
             necessary to sustain a claim of ineffective assistance of appellate counsel.  Indeed,
20           in his motion for discretionary review he does not even address how counsel's
             failure to raise the claim was prejudicial.  In these circumstances, review of this
21           claim is not warranted.

22   Dkt. 6-1, at 423.

23

24

1    In order to exhaust his claim, petitioner had to give the state courts one full opportunity to

2    resolve any constitutional issues by invoking one complete round of the State's appellate review

3    process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This requires "fairly present[ing]"

4    the claims to the state's supreme court. *Id.* at 838, 848. Thus, the question is whether petitioner

5    exhausted his claim of violation of the Confrontation Clause when he sought review of the denial

6    of his PRP by the Washington Supreme Court.

7        If the state court reviews a claim on its merits, exhaustion is satisfied even if the claim

8    was not brought in the appellate brief. *See Cooper v. Neven*, 641 F.3d 322, 331 (9th Cir. 2011).

9    Here, the Supreme Court did not review any alleged Confrontation Clause on the merits: as the

10   Commissioner's ruling shows, the Commissioner determined that (1) petitioner had not shown a

11   conflict of authority meriting review regarding Division One's decision on the performance

12   prong of ineffective assistance of appellate counsel and (2) petitioner had not shown or even

13   addressed the prejudice prong. Dkt. 6-1, at 423–24; *see Strickland v. Washington*, 466 U.S. 668,

14   687 (1984) (petitioner must show both deficient performance and that the performance

15   prejudiced the defense to prevail on a claim on ineffective assistance of counsel).

16       Even construing the Commissioner's decision as commenting on whether appellate

17   counsel's Confrontation Clause argument would have succeeded, this was not "consideration on

18   the merits" of whether exclusion of the text messages violated the Confrontation Clause. The

19   Ninth Circuit was confronted with a nearly identical situation in *Cockett v. Ray*, 333 F.3d 938,

20   942 (9th Cir. 2003), where petitioner argued that the state supreme court had considered a

21   confrontation claim on the merits by concluding that appellate counsel was not deficient for

22   omitting the argument. The Ninth Circuit held that considering and rejecting the ineffective

23

24

1   assistance claim—even where that involved commenting on the merits of the underlying

2   confrontation claim—did not exhaust the confrontation claim. *Id.* Just so here.

3        Petitioner did reference the Confrontation Clause in his motion for discretionary review,

4   within the context of his argument that Division One erred in analyzing his ineffective assistance

5   of appellate counsel claim. *See* Dkt. 6-1, at 383. He argued that Division One had improperly

6   applied Washington State law interpreting the Confrontation Clause when it denied his personal

7   restraint petition. *See* Dkt. 6-1, at 392. As the Supreme Court noted when it denied review,

8   petitioner's arguments were not arguments of a freestanding Confrontation Clause violation but

9   arguments that petitioner's counsel on direct appeal had been ineffective by not making a

10  Confrontation Clause argument. This ineffective assistance of appellate counsel argument did

11  not exhaust petitioner's confrontation argument. *See Kelly v. Small*, 315 F.3d 1063, 1068 n.2

12  (9th Cir. 2003), *holding regarding* sua sponte *stays overruled by Robbins v. Carey*, 481 F.3d

13  1143 (9th Cir. 2007).

14       Indeed, even if Crockett *had* raised a freestanding Confrontation Clause argument—that

15  is, one not within the rubric of ineffective assistance of appellate counsel—in his motion for

16  discretionary review, it would not exhaust his claims where he did not bring such a claim before

17  Division One and where the Supreme Court did not reach such a claim on the merits.

18  Submission of a new claim for discretionary review does not fairly present that claim. *Castille v.*

19  *Peoples*, 489 U.S. 346, 351 (1989) ("[R]espondent contends . . . that[] the submission of a new

20  claim to a State's highest court on discretionary review constitutes a fair presentation. We

21  disagree.").

22       Ineffective assistance of counsel claims may appear on first glance to overlap with the

23  underlying claim of a constitutional or rule violation. This is because to prevail on the claim of

24

1    ineffective assistance, petitioner must show that had counsel made the underlying objection, it

2    would have had merit.   *See Strickland*, 466 U.S. at 488 (requiring a reasonable probability that

3    the outcome of the proceeding would have differed but-for the allegedly deficit performance).

4            But for exhaustion purposes, it is error to conflate exhausting an ineffective assistance of

5    counsel claim with exhausting the underlying constitutional claim.  In *Kelly v. Smith*, a petitioner

6    asserted that his claim of prosecutorial misconduct was exhausted on appeal when he argued that

7    his counsel was ineffective for failing to move to have the prosecutor recused.  315 F.3d at 1068.

8    The Ninth Circuit observed:

9            they remain separate constitutional claims. . . .[I]t was incumbent on Petitioner to
              set forth the alleged failure to file a motion to recuse [the prosecutor] as an
10           independent constitutional claim in order to give the California Supreme Court a
              "full and fair opportunity" to act upon it, rather than hope that the court would infer
11           this Sixth Amendment claim from the related failure to object.

12   *Id.* at 1068 n.2.

13           Because petitioner did not fairly present his confrontation claim to the state's highest

14   court by presenting it as an ineffective assistance of appellate counsel claim and because the

15   Commissioner's ruling denying review did not consider a confrontation argument on the merits,

16   petitioner did not exhaust his claim that the trial court violated the Confrontation Clause by

17   excluding the text messages.

18                     **C.  Ground One Is Procedurally Defaulted**

19           Finding that a petitioner's grounds have not been presented for a complete round of

20   review in state court is not the end of the inquiry—a petitioner has technically exhausted his state

21   remedies if his "'claims are now procedurally barred under [state] law[.]' " *Gray v. Netherland*,

22   518 U.S. 152, 161–62 (1996) (quoting *Castille*, 489 U.S. at 351).

23

24

1    If a petitioner's claims are procedurally barred under state law, they are deemed

2    procedurally defaulted for purposes of federal habeas review.  *Coleman v. Thompson*, 501 U.S.

3    722, 735 n.1 (1991).  The doctrine of procedural default applies where either a state court has

4    been presented with the federal claim, yet has declined to reach the issue for procedural reasons,

5    or where it is clear that the state court would find that the claim is procedurally barred.  *Franklin*

6    *v. Johnson*, 290 F.3d 1223, 1230–31 (9th Cir. 2002).  This Court will hear the merits of a

7    procedurally defaulted claim only if the petitioner can show cause for and prejudice from the

8    default or that there has been a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at

9    750.  A petitioner can show cause by demonstrating that "some objective factor external to the

10   defense impeded [petitioner]'s efforts to comply with the State's procedural rule." *Murray v.*

11   *Carrier*, 477 U.S. 478, 488 (1986).

12   As noted above, petitioner never fairly presented his Confrontation Clause claim to the

13   state courts because it was always framed as an ineffective assistance of appellate counsel claim.

14   Moreover, if petitioner attempted to bring such a claim now, RCW 10.73.090 would bar such a

15   claim since his judgment became final within the meaning of Washington state law more than a

16   year ago, when the Court of Appeals issued its mandate on direct appeal.  *See* RCW

17   10.73.090(3)(b); Dkt. 6-1, at 171 (mandate issued November 9, 2016).

18   Here, petitioner has not made any showing of cause and prejudice to excuse his default.

19   Nor does he claim that there has been a fundamental miscarriage of justice or any external factor

20   to the defense preventing him from complying with the State court's procedural rule.  Because he

21   has procedurally defaulted on his claim and has not made such a showing, ground one must be

22   dismissed.

23                    **D.  No Substantial and Injurious Effect on the Jury's Verdict**

24

1    As noted above, petitioner does not show that any court considered on the merits his

2    claim of violation of the Confrontation Clause when the text messages were excluded, hampering

3    this Court's ability to review whether was contrary to or an unreasonable application of federal

4    law.  However, even if the Court were to assume without deciding that petitioner properly raised

5    his Confrontation Clause claim, the Court would not grant petitioner's habeas petition unless

6    petitioner showed both a constitutional violation and that the error had a substantial and injurious

7    effect on the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993); *Whelchel*

8    *v. Washington*, 232 F.3d 1197, 1205 (9th Cir. 2000); *accord Valencia v. Runnels*, 512 Fed.

9    App'x 712 (9th Cir. 2013) (assuming without deciding that there was constitutional error but

10   affirming on *Brecht* grounds).  "Where a federal judge in a habeas proceeding is in grave doubt

11   about whether a trial error of federal law had 'substantial and injurious effect of influence in

12   determining the jury's verdict," that error is not harmless.  *O'Neal v. McAnich*, 513 U.S. 432,

13   436 (1995).

14   In this case, the trial court excluded most of the eight text messages that petitioner's

15   counsel sought to have admitted.  *See* Dkt. 6-1, at 750–51.  Petitioner argues that the excluded

16   text messages showed that shortly before making allegations against petitioner, the victim called

17   her mother abusive, said that her mother was taking the victim's social security money, said

18   sometimes she wanted to stab her mother, and said that she was at a breaking point.  *See* Dkt. 1,

19   at 7–8.  Petitioner asserts that "[e]vidence that [the victim] wanted out of the house, wanted to go

20   live with her biological family, wanted the money being paid to [her mother] for herself, and was

21   being physically disciplined by [her mother] was relevant to whether [the victim] made up the

22   allegations against [petitioner] to get back at [her mother] and to get out of [her mother's]

23   house."  Dkt. 1, at 9.

24

1    However, the record of proceedings from petitioner's trial reveals that he was amply able

2    to present evidence in support of his case, even without the excluded text messages.  During her

3    testimony, the victim freely admitted that her mother had beaten her (Dkt. 6-1, at 811, 833–34,

4    837, 842–43), that she was unhappy that her mother had married petitioner (Dkt. 6-1, at 820),

5    and that she disclosed petitioner's abuse because she was angry at her mother.  Dkt. 6-1, at 841–

6    43.  Using the two of the text messages, petitioner was able to extensively question the victim to

7    establish a motivation to lie based on her text to her brother that she had a plan to get justice

8    (Dkt. 6-1, at 876) and her text to her friend on the day of the disclosure of abuse that victim felt

9    like stabbing her mother sometimes.  Dkt. 6-1, at 877.  Additionally, the victim's mother testified

10    that she received petitioner's social security checks (Dkt. 6-1, at 962) and that she had hit and

11    "physical[ly] disciplined" her daughter.  Dkt. 6-1, at 990–91.  Petitioner relied on this evidence

12    in closing to argue that her mother had physically abused the victim (Dkt. 6-1, at 1418) and that

13    the victim had made up a lie about petitioner to "get back at" her mother.  *See* Dkt. 6-1, at 1419.

14    Thus here, even if the Court assumes that it was error to exclude the other text messages,

15    it was harmless.  Petitioner was amply able to develop evidentiary support for his theory that the

16    victim invented her allegations as retribution against her mother.  Any error in excluding the

17    messages would not have had a substantial and injurious effect on the jury's verdict.

### IV.  Ground Two:  Ineffective Assistance of Trial Counsel for Failure to Object

#### A.  Petitioner's Arguments

20    In support of his second ground for relief, petitioner argues that his counsel rendered

21    deficient performance by not objecting when a social worker and a detective testified regarding

22    numerous out-of-court statements that the victim made to them describing the abuse, when they

23    interviewed her.  *See* Dkt. 1, at 11.  Petitioner argues that Division One misapplied U.S. Supreme

Court law about the standard for establishing ineffective assistance of counsel, specifically the prejudice prong from *Strickland*.  Dkt. 1, at 11.  Further, petitioner argues, Division One reached the wrong result because allowing a detective and a social worker to corroborate the victim's statements "tipped the balance in favor of conviction" in this case, where there was no corroborating evidence or witness to the abuse.  *See* Dkt. 1, at 12.

### B.  Petitioner Exhausted Ground Two

The Court notes that unlike Ground One, petitioner fairly presented Ground Two to the Supreme Court.  *See* Dkt. 6-1, at 150.  The Supreme Court's ruling denying review rejected this argument on the merits, finding that Division One had applied the proper standard and had explained in detail why there was no prejudice from the deficient performance.  Dkt. 6-1, at 424–25.  Therefore, petitioner appropriately exhausted his claim, and the undersigned reviews whether petitioner has shown that he is entitled to relief under the grounds set forth in the AEDPA.

### C.  Application of AEDPA Standards

To be entitled to relief, petitioner would have to show that he has satisfied one of the alternatives in 28 U.S.C. § 2254(d):  that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented.

The Court typically looks to the last reasoned state court decision—here, the Supreme Court's decision denying review, which included a discussion of petitioner's ineffective assistance of trial counsel arguments.  *See* Dkt. 6-1, at 424–25.  Where, as here, a state supreme court commissioner adopts or substantially incorporates the reasoning from a previous state court

1    decision, however, the Court will also review the previous decision.  *See Edwards v. Lamarque*,

2    475 F.3d 1121, 1126 (9th Cir. 2007) (holding that the last reasoned decision was that of the

3    state's intermediate appellate court but that since that court incorporated the trial court's

4    reasoning, "we may consider both decisions."); *but see Barker v. Fleming*, 423 F.3d 1085, 1093

5    (9th Cir. 2005) ("the [Washington State Supreme Court] Commissioner reviewed the record

6    independently and authored an order that reflected his own reasoning.  Thus we review the

7    Supreme Court Ruling Denying Review without considering the decision of the Washington

8    Court of Appeals.").  Thus the analysis of petitioner's first ground for review focuses on both

9    Division One's holding that there was no ineffective assistance of trial court and the Supreme

10   Court's ruling that Division One properly applied the law.

### 1.  Not Contrary to or an Unreasonable Application of Federal Law

12       A state court decision is "contrary to" federal law if the court either "arrives at a

13   conclusion opposite to that reached by [the Supreme] Court on a question of law" or arrives at a

14   different result in a case that is "materially undistinguishable from a relevant Supreme Court

15   precedent."  *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  A state court decision

16   unreasonably applies clearly established federal law if it correctly identifies a governing rule but

17   then applies it to a new set of facts in an objectively unreasonable manner or if it extends or fails

18   to extend a clearly established legal principle to a new context in a way that is objectively

19   unreasonable.  *DeWeaver v. Runnels*, 556 F.3d 995, 997 (9th Cir. 2009).

20       The AEDPA standards are highly deferential:  state court decisions must be given the

21   benefit of the doubt.  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).  An

22   unreasonable application of federal law must be "objective unreasonable, not merely wrong;

23   even clear error will not suffice."  *White v. Woodall*, 572 U.S. 415, 419 (2014).

24

1    Here, the crux of petitioner's argument is that Division One unreasonably applied the law

2    of ineffective assistance of counsel set forth in *Strickland v. Washington*:

3       [T]he Court of Appeals said there was no prejudice to Crockett.
           Crockett cannot satisfy his burden to demonstrate a ***substantial***
4          likelihood that the result of the trial would have been different had
           M.W.'s statement to Brooks and Campbell not been admitted.
5       *Matter of Crockett,* No. 79067-6-I, 2019 WL 1013049, at *4.
           This was an incorrect test and much higher test for prejudice than that
6       prescribed by controlling United States Supreme Court precedent. The correct test is
        "whether there is a reasonable probability that, absent the errors, the factfinder would
7       have had a ***reasonable*** doubt respecting guilt." *Strickland v. Washington*, 466 U.S.
        668, 695 (1984)[](emphasis added).
8    Dkt. 1, at 12.

9       When addressing whether a state court's application of *Strickland* is unreasonable the

10   standard is doubly deferential: "A state court must be granted a deference and latitude that are

11   not in operation when the case involves review under the *Strickland* standard itself." *Harrington*

12   *v. Richter*, 562 U.S. 86, 101 (2000).

13      A state court's determination that a claim lacks merit precludes federal habeas relief
        so long as "fairminded jurists could disagree" on the correctness of the state court's
14      decision. *Yarborough v. Alvarado,* 541 U.S. 652, 664[](2004). And as this Court
        has explained, "[E]valuating whether a rule application was unreasonable requires
15      considering the rule's specificity. The more general the rule, the more leeway
        courts have in reaching outcomes in case-by-case determinations." *I[d].*
16   *Harrington*, 562 U.S. at 101.

17      Regarding petitioner's claim of ineffective assistance of trial counsel for failure to object

18   to the social worker's or detective's statements, Division One first set forth the ineffective

19   assistance of counsel standard—

20      To prevail on a claim of ineffective assistance of trial counsel, Crockett must prove
        both (1) that "counsel's performance fell below an objective standard of
21      reasonableness in light of all the circumstances" and (2) resulting prejudice, i.e.,
        "that in the absence of counsel's deficiencies, there is a reasonable probability that
22      the result of the proceeding would have been different." *In re Pers. Restraint of*
        *Lui*, 188 Wn.2d 525, 538[](2017). "'Counsel's errors must be so serious as to
23      deprive the defendant of a fair trial, a trial whose result is reliable.'" *Lui*, 188 Wn.2d
        at 538–39 (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562
24      U.S. 86, 104[](2011)). "In other words, '[t]he likelihood of a different result must

be substantial, not just conceivable.'" *Lui*, 188 Wn.2d at 539 (alteration in original) (quoting *Harrington*, 562 U.S. at 112). Additionally, "to establish deficient performance based upon defense counsel's failure to object, the defendant must show . . . that the proposed objection would likely have been sustained." *State v. Townsend*, 142 Wn.2d 838, 850[](2001). The court's scrutiny of counsel's performance is "highly deferential," and the court strongly presumes reasonableness. *Lui*, 188 Wn.2d at 539. To that end, Crockett "must establish an absence of any legitimate trial tactic that would explain counsel's performance." *Lui*, 188 Wn.2d at 539.

*Matter of Crockett*, 2019 WL 1013049, at *2.

Division One's phrasing of the prejudice prong echoes U.S. Supreme Court law. Indeed, the cases cited by Division One regarding the prejudice prong are either U.S. Supreme Court cases or cases that themselves rely on U.S. Supreme Court cases. *See Lui*, 188 Wn.2d at 538–39 (citing *Strickland*, 466 U.S. at 687; *Harrington*, 562 U.S. at 104, 112). For instance, the "substantial likelihood" language that Division One cites—and that petitioner takes issue with— comes directly from *Harrington v. Richter*:

This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." [466 U.S.] at 693, 697[.] *The likelihood of a different result must be substantial,* not just conceivable. *Id.*, at 693[.]

*Harrington*, 562 U.S. at 112 (emphasis added).

After setting forth the standard, Division One held that counsel's performance was deficient for failing to object to the social worker's and detective's statements. *See Matter of Crockett*, 2019 WL 1013049, at *3. However, Division One held that petitioner failed to show prejudice—the second *Strickland* prong:

*State v. Ramirez-Estevez*, 164 Wn. App. 284[](2011), is instructive here. In *Ramirez-Estevez*, the defendant appealed his jury trial conviction of five counts of first degree child rape for sexually assaulting his girlfriend's daughter, E.O. . . . The defendant argued, among other things, that the trial court erred by admitting testimony from two witnesses about E.O.'s statements to each of them that the

defendant had raped her. . . .  On appeal, Division Two of this court concluded that the trial court erred by admitting that testimony. . . .

> The court nevertheless concluded that the admission of the testimony was harmless in light of E.O.'s own credible testimony:
>
> The jury heard E.O.'s detailed testimony about Ramirez-Estevez's multiple rapes and observed her demeanor on the witness stand, including during cross-examination by Ramirez-Estevez's trial counsel.  Being subject to such cross-examination itself diminished, if not extinguished, the type of prejudice that sometimes results from admission of hearsay where the declarant is not subject to cross-examination at trial.  In this way, E.O.'s live testimony in front of the jury eclipsed her earlier consistent recounting of the events to [the witnesses] and more than sufficiently supported the jury's verdict.  In addition, although not conclusive, [a nurse practitioner]'s testimony also supported E.O.'s in-court testimony that Ramirez-Estevez had raped her multiple times.
>
> Furthermore, we defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.  In addition to listening to and watching E.O. on the witness stand, the jury also observed Ramirez-Estevez's demeanor as he denied having raped her. We do not second guess the jury, which obviously believed E.O. and not Ramirez-Estevez.

*Ramirez-Estevez*, 164 Wn. App. at 293–94 (citation omitted).

Here, as in *Ramirez-Estevez*, the jury heard M.W.'s testimony about Crockett's rapes and observed M.W.'s demeanor on the witness stand, including during her extensive cross-examination by Crockett's trial counsel.  As in *Ramirez-Estevez*, that cross-examination diminished the type of prejudice that could have resulted from the admission of Brooks' and Campbell's testimony had M.W. not been subject to cross-examination at trial.  And, as in *Ramirez-Estevez*, the jury also observed the defendant deny the charges and clearly did not believe him.  Although in *Ramirez-Estevez* there was additional testimony from a nurse practitioner, who had testified that notches on a hymen do not always mean sexual abuse and that E.O.'s notches were consistent with the story that E.O. had told her, that testimony was not, as the court observed, conclusive. . . .  Furthermore, in this case, M.W.'s testimony was corroborated at least in part by Rhonda's and Crockett's own testimony that M.W. had complained of Crockett's abuse as early as 2008.  For these reasons, Crockett cannot satisfy his burden to demonstrate a substantial likelihood that the result of the trial would have been different had M.W.'s statements to Brooks and Campbell not been admitted.  *See State v. Hendrickson*, 129 Wn.2d 61, 79[](1996) (defendant alleging ineffective assistance bears burden of showing prejudice).

Crockett argues that his trial counsel's failure to object was prejudicial because, in closing, the State emphasized the consistency between M.W.'s testimony and her statements to Brooks and Campbell.  He points to three instances in the State's closing in which the State noted that what M.W. said to Brooks and Campbell was consistent with M.W.'s testimony at trial.  But the State used the majority of its

closing argument to question Crockett's credibility, explain why M.W.'s memory might lack specific details concerning events that occurred when M.W. was only 12 years old, question Rhonda's credibility, and theorize as to why M.W. did not report Crockett's abuse right away. The record does not reflect, as Crockett suggests, that the State substantially relied on the statements that M.W. made to Brooks and Campbell. Furthermore, the State repeatedly made clear to the jury that M.W.'s word alone was enough to convict if the jury believed M.W. Crockett's argument is unpersuasive, and because Crockett has not established prejudice, his ineffective assistance claim fails.

*Matter of Crockett*, 2019 WL 1013049, at \*4–\*5.

As the analysis above makes clear, Division One did not unreasonably apply the law of ineffective assistance of counsel. On two separate occasions in the opinion, Division One correctly cited the rule that prejudice is a "reasonable probability" that the outcome could have differed. *See id.* at \*2, \*5. Division One also applied legal standard directly from a U.S. Supreme Court opinion when it quoted the "substantial likelihood" language.

Moreover, when viewed as a whole, the opinion properly analyzes there was a reasonable probability that the outcome would have changed where the defense attorney should have objected to evidence that effectively bolstered a victim's credibility, noting that there was other testimony, the admission of which was not challenged, that had the same effect. In addition, the focus of the State's closing argument was on the credibility of petitioner and the victim's mother, explaining the lack of detail in the victim's testimony, and theorizing why the victim delayed disclosure of the abuse.

As the Supreme Court Commissioner noted, Division One did not unreasonably apply clearly established federal law but relied on rule statements taken from U.S. Supreme Court cases and, when viewed as a whole, Division One's opinion correctly applies the prejudice standard from *Strickland* to petitioner's arguments. Petitioner fails to show that the state court's decision on his second ground for review was error under the standards set forth in the AEDPA. Therefore, petitioner's second ground for review fails.

1      **V.  No Evidentiary Hearing Required**

2          The decision to hold an evidentiary hearing is committed to the Court's discretion.

3   *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

4   hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

5   entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

6   available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

7   state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not

8   entitle petitioner to relief under § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the

9   record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

10  court is not required to hold an evidentiary hearing." *Id*. The Court finds it is not necessary to

11  hold an evidentiary hearing in this case because, as discussed in this report and recommendation,

12  the petition may be resolved on the existing state court record.

13     **VI.  CERTIFICATE OF APPEALABILITY**

14         Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

15  court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

16  (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

17  has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

18  2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

19  disagree with the district court's resolution of his constitutional claims or that jurists could

20  conclude the issues presented are adequate to deserve encouragement to proceed further."

21  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

22  (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

23  certificate of appealability with respect to this petition.

24

**CONCLUSION**

Both grounds should be dismissed with prejudice and the habeas petition should be denied.  No evidentiary hearing should be held, and no certificate of appealability should be issued.  The case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on April 24, 2020, as noted in the caption.

Dated this 9th day of April, 2020.


J. Richard Creatura
United States Magistrate Judge